IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| TERESA A.T.,<br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>  Defendant. | Case No. 1:20-cv-01443-JEH |

### Order and Opinion

Now before the Court is the Plaintiff Teresa A.T.'s Motion for Summary Judgment (Doc. 16), the Commissioner's Motion for Summary Affirmance (Doc. 20), and the Plaintiff's Reply (Doc. 21).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

### I

Teresa A.T. filed an application for disability insurance benefits (DIB) on June 21, 2017 alleging disability beginning on August 15, 2015. Her claims were denied initially on February 8, 2018 and upon reconsideration on July 3, 2018. Teresa filed a request for hearing concerning her DIB application which was held on May 30, 2019 before the Honorable Robert Luetkenhaus (ALJ). At the hearing, Teresa was represented by an attorney, and Teresa and a vocational expert (VE),

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 9).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 11) on the docket.

Mary Andrews, testified. A supplemental hearing was held on November 19, 2019 at which Teresa was again represented by the same counsel and a different VE, Heather Mueller, testified. Following the hearings, Teresa's claim was denied on January 3, 2020. Her request for review by the Appeals Council was denied on October 20, 2020, making the ALJ's Decision the final decision of the Commissioner. Teresa timely filed the instant civil action seeking review of the ALJ's Decision on December 22, 2020.

## II

At the May 2019 hearing, Teresa was 57 years old and lived alone in an apartment. On her Form SSA-3368, Teresa claimed the following conditions limited her ability to work: chronic obstructive pulmonary disease (COPD); deep vein thrombosis (DVT); and lung nodules. AR 261. She testified her past work was that of caregiver for the elderly. She would go into their homes and do "small tasks" for them including "some laundry," housekeeping, companionship, and if needed, grocery shopping. AR 61. That past work also involved assisting individuals out of the shower or bathtub, if they needed the help. She testified that trouble breathing was one thing that kept her from currently working as her breathing "goes from extreme bad. I get bronchitis easily. I'm on an inhaler. I do breathing treatments daily." AR 69.

Teresa further detailed that walking and any kind of work around her apartment caused her to be short of breath and to have a hard time. She testified she could walk no further than a block as a result of her trouble breathing. She still had a pulmonary embolism in the lungs for which she took blood thinners daily. She had lung nodules which were benign but caused her to feel pain on her left side "all day, every day." AR 72. VE Andrews eventually testified. The ALJ commented that after hearing Teresa's testimony about her past work, "it looks like we're narrowed down to just the one job, the companion job." AR 85. The VE

responded that was consistent with Teresa's description of what she did. The VE also answered that an individual with the RFC of light exertion the ALJ ultimately assessed would be capable of performing Teresa's past work as a "companion." After the hearing, Teresa's representative requested vocational advice from VE Michael Blankenship. He classified Teresa's past relevant work as that of a medium, semi-skilled "home attendant."

At the supplemental hearing, VE Mueller testified she reviewed Teresa's record and classified Teresa's past work as "home attendant" which she performed at the physically very heavy level. AR 43. VE Mueller testified further that the Dictionary of Occupational Titles (DOT) split "home attendant" and "companion" into two different positions, but in today's economy, those titles and positions were "pretty much interchangeable." AR 44. VE Mueller did not agree with VE Andrews' assessment of Teresa's past relevant work.

### III

At Step Two of the Decision, the ALJ found that Teresa had the following severe impairments: COPD; a history of pulmonary embolism; and degenerative changes of the lumbar spine. AR 12. At Step Three, the ALJ explained he had reviewed the records and found that Teresa did not have impairments that met or medically equaled the impairments of any section of 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14. The ALJ also explained the "state agency consultants determined that the claimant's impairments did not meet the criteria of any of the listed impairments." AR 14. He first summarily stated Listing 3.02 was not met because "the evidence faile[d] to document the requisite levels of FEV1 or FVC values identified in 3.02A or 3.02B," there [was] no chronic impairment of gas exchange evidenced by DLCO, arterial PaO2 or PaCO2 or SpO2 measurements" as necessary to satisfy Listing 3.02C, and there was "also no evidence for exacerbations or complications requiring three hospitalizations lasting 48 hours

3

each and occurring within a 12-month period at least 30-days apart during the alleged disability period" as necessary to satisfy Listing 3.02D. AR 14. The ALJ then noted a pulmonary function study completed during Teresa's consultative examination resulted in a $FEV_1$ value of 1.07, but the ALJ rejected that result based upon consultative examiner Afiz Taiwo, M.D.'s notation that the study was "poor" and the State Agency's determination that the testing was invalid. The ALJ also observed Teresa's DLCO testing was invalid as she had been sick with bronchitis for two weeks prior to performing the test. A 6-minute walk test was performed for purposes of determining whether Teresa satisfied Listing 3.02C(3), and resulting values from that test "were well above listing level." AR 15. Finally, as for Listing 3.02D, the ALJ observed Teresa had not required any further inpatient hospitalizations after April 2017, treatment records indicated that while she had occasional exacerbations of COPD, those flares were treated with increased nebulizer use.

> The ALJ made the following residual functional capacity (RFC) finding:
>
> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she could only frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds. She could frequently stoop, kneel, crouch, and crawl. Must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dust, gases, and poor ventilation.

AR 15. The ALJ considered the evidence revealing that Teresa established care at ProHealth Primary Care in April 2016 after two emergency room visits for difficulty breathing. At the April 2016 visit, Teresa stated that although she had been diagnosed with COPD previously, her activity had not been limited before she recently developed a cough. At her consultative examination in August 2017, Teresa was found to be short of breath with exertion. In April 2017, Teresa was admitted to the hospital for three days for treatment of a left lower lobe pulmonary

embolism, urinary tract infection, and COPD. In March 2018, Teresa had normal effort and breath sounds. The ALJ additionally observed that while Teresa had not treated with a pulmonologist since October 2017, she received sporadic treatment for bronchitis or exacerbations of her COPD. Throughout the Decision, the ALJ noted that Teresa continued to smoke.

The ALJ concluded that Teresa was capable of performing her past relevant work as a companion and accordingly found Teresa was not disabled from her alleged onset date through her date last insured.

### IV

Teresa argues: 1) the ALJ erred in offering only a perfunctory evaluation and in failing to consult a medical expert with regard to whether Teresa's combined impairments met or medically equaled the listing of presumptive disability, Listing 3.02A; and 2) the ALJ committed reversible error when he failed to properly weigh the testimony of multiple VEs when classifying Teresa's past relevant work and resultantly denying her application for disability benefits at Step Four of the Decision.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

>   5)  is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Teresa claims error on the ALJ's part at Steps Three and Four.

**A**

Teresa argues that the ALJ failed to adequately evaluate the basic objective medical evidence or the standard of Listing 3.02 properly. The "basic objective medical evidence" of which she speaks is her pulmonary function test[3] which resulted in, as the ALJ identified in the Decision, an $FEV_1$ value of 1.07. Teresa contends that the non-examining State Agency consultant and the ALJ after her were content to merely invent a reproducibility issue with the study and disregard the result. She further argues that the ALJ's minimal Listing 3.02A analysis was critically flawed where the ALJ's note of "normal breath sounds with no wheezes" seemed to neglect when a pulmonologist actually checked there were regularly positive pulmonary findings on exam and breath sounds and wheezing have nothing to do with the listing, and the ALJ appeared to make a thinly veiled credibility argument when noting Teresa's continued smoking. The

---

[3] The August 19, 2017 spirometry study.

Commissioner counters it was reasonable for the ALJ to credit the consultative examiner's and State Agency medical advisor's views that they did not think the spirometry study performed at the consultative examination met the required standard. The Commissioner argues the State Agency doctors' unrefuted opinions that Teresa did not meet the criteria of any listed impairment constituted substantial evidence that her impairments were not equivalent to a listing. The Commissioner also argues the fact that medical advisor suggested the agency proceed with several tests to try to evaluate whether Teresa met Listing 3.02 in one of several different ways was not suggestive of an attempt to undermine Teresa's claim.

    The crucial point Teresa makes is that Listing 3.02 provides "Chronic respiratory disorders due to any cause except CF (for CF, see 3.04) with A, B, C, *or* D." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 3.02 (emphasis added). As Teresa put it, the fact that her testing values in some areas of Listing 3.02 were above listing-level does not mean that the values would be above listing-level in all areas. The Court is therefore unconvinced by the Commissioner's argument that the ALJ could not have possibly erred at Step Three because the agency, after rejecting test results showing Listing 3.02A was met, had Teresa proceed with several tests to try to evaluate whether she met Listing 3.02 in a different way. Undoubtedly, the agency thoroughly tested Teresa per Listing 3.02C. But that alternative testing left unresolved the fact that there was no *valid* test for the agency to consider for purposes of determining whether Teresa met Listing 3.02A.

    Listing 3.02A provides that it is met where a female age 20 or older who is 60.25 to 62.50 inches tall without shoes has an $FEV_1$ of *less than or equal to 1.15*. 20 C.F.R. Part 404, Subpt. P, App'x 1, § 3.02A. Teresa highlights her $FEV_1$ values during the spirometry test the ALJ considered included a best pre-bronchodilator score of 1.14 and a best post-bronchodilator score of 1.01, and the ALJ cited another

resulting FEV$_1$ value of 1.07. All those values were low enough to meet Listing 3.02A. But the ALJ explicitly rejected Teresa's Listing 3.02A-level FEV$_1$ value for two reasons: 1) consultative examiner Dr. Taiwo noted the study was poor due to Teresa's persistent coughing during testing; and 2) the testing was determined to be invalid as Teresa's flow loops were inconsistent and not reproducible.

Listing 3.00 imposes the following requirements for spirometry testing in order for the testing to be acceptable. The claimant must be medically stable at the time of the test, and examples of when a claimant would not be considered medically stable include when the claimant: is not within two weeks of a change in her prescribed respiratory medication; is not experiencing, or within 30 days of completion of treatment for, a lower respiratory tract infection; is not experiencing, or within 30 days of completion of treatment for, an acute exacerbation (temporary worsening) of a chronic respiratory disorder; and is not hospitalized, or within 30 days of a hospital discharge, for an acute myocardial infarction. 20 C.F.R. Part 404, Subpt. P, App'x 1, § 3.00E(2)(a)(i)-(iv). Also, if the claimant's FEV$_1$ is less than 70 percent of her predicted normal value during testing, repeat spirometry after inhalation of a bronchodilator to evaluate the claimant's respiratory disorder under the listings is required unless medically contraindicated. 20 C.F.R. Part 404, Subpt. P, App'x 1, § 3.00E(2)(b). Finally, the claimant's forced expiratory maneuvers must be satisfactory; a forced expiratory maneuver is considered satisfactory when, among other things, the test tracing has a sharp takeoff and rapid rise to peak flow, has a smooth contour, and either lasts for at least six seconds or maintains a plateau for at least one second. 20 C.F.R. Part 404, Subpt. P, App'x 1, § 3.00E(c).

With regard to the first reason, had it been the only stated reason, it would not equate to substantial evidence in support of the ALJ's conclusion that the test results were invalid. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Dr. Taiwo did not say the test (PFT) was invalid generally, nor did he identify any of the requirements of spirometry testing as stated in Listing 3.00 the test did not meet. He said only that it was "poor" without elaboration as to the ramifications, if any, that observation warranted. Additionally, Dr. Taiwo said that only after he said: "PFT: Moderately severe obstruction *without significant improvement* in FVC FEV1 post bronchodilation." AR 641 (emphasis added). The ALJ failed to address that first statement. Perhaps the ALJ extrapolated from Dr. Taiwo's use of the word "poor" that the latter believed the study invalid based upon the ALJ's second stated reason for rejecting the study results. However, there too, the Court is left to wonder whether the ALJ simply failed to resolve conflicts in the record evidence. *See Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008) (indicating the ALJ had the authority and responsibility to resolve conflicts in the record evidence).

In the Disability Determination Explanation at the initial level (the one the ALJ cited to reject the PFT as invalid), the State Agency medical advisor[4] repeated Dr. Taiwo's observations as to Teresa's August PFT and stated, "This Vent Study is not reproducible." AR 95. In that same Explanation, in another section, someone stated[5] that the August 2017 PFT was "not a valid testing due to no reproducibility. Flow loops were terrible being inconsistent and not reproducible. There was no real initial blast but a gradual blow out of the trials." AR 96. That someone further stated, "Now we have a PFT that is of no use to us[.]" AR 97. The State Agency medical consultant wrote that "vent studies suggested the claimant had capability above listing level. The suboptimal performance on

---

[4] The Explanation sometimes indicated "Medical Advisor" and sometimes "Medical/Psych Consultant" though the same medical doctor signed under each heading.
[5] It is not entirely certain who made the statement but, as Teresa points out, "Susan MRU" appeared at the bottom of that statement. *See* AR 97.

testing may not reflect the claimants [sic] physiologic capability." AR 98. She wrote further, "Vent studies have not documented a listing level." *Id.*

In contrast, the Spirometry Report itself included a "Report Summary" that indicated "Pre Med: Tests 4 Acceptable 0 Reproducible 0" and "Post Med: Tests 3 Acceptable 0 *Reproducible 2*." AR 635 (emphasis added). The Therapist Comment Sheet included with the Spirometry Report provided Teresa "[g]ave good effort pre and post test." AR 633. The ALJ did not address the discrepancy between Teresa's noted good effort and the State Agency medical consultant's observation of suboptimal performance. The ALJ also did not address the resulting $FEV_1$ values of less than 1.15 (the value stated in 3.02A) and the State Agency consultant's statement that vent studies did not document listing level. The ALJ also apparently accepted at face value the State Agency consultant's conclusion the testing was not reproducible though something was noted to be reproducible – twice – in the Spirometry Report itself.

Later in the Disability Determination Explanation, the following statement was made: "PFT was invalid because [claimant] was not stable at this time & values are not reproducible." AR 102. Teresa highlights, to illustrate she was medically stable in August 2017, that her last relevant pulmonary treatment was in April 2017 and she would see her pulmonologist again for routine care in October 2017. She also points out that Listing 3.00E(2)(a)(iii) states, "Wheezing by itself does not indicate that you are not medically stable." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 3.00E(2)(iii). The ALJ included no discussion in his Decision on this point and the Commissioner does not address this point in the context of Teresa's spirometry study. To the extent the ALJ also relied upon State Agency statements that Teresa was not stable at the time of the spirometry study, the State Agency notations do not include an explanation for not having Teresa submit to a

11

spirometry re-test while medically stable.[6] The State Agency instead very clearly chose to proceed with a DLCO (Listing 3.02C) and then a 6-minute walking test (Listing 3.02C).

The Commissioner says the ALJ's Step Three findings are supported by substantial evidence in the form of the State Agency doctors' statements that Teresa did not meet the criteria of any listed impairment. Often enough, state agency doctors' opinions of whether a claimant meets or medically equals a listing constitute substantial evidence in support of an ALJ's same finding. *See Scheck v. Barnhart*, 357 F.3d 697, (7th Cir. 2004) (finding substantial evidence supported finding that claimant did not meet or equal a listing where State Agency physicians opined the claimant was not disabled). But the Court is precluded from finding as such here given that the State Agency-made statements and conclusions about the August 2017 spirometry study and decisions as to what types of additional tests were warranted raises more questions than answers insofar as *Listing 3.02A* is concerned, as illustrated above.

Finally, the Commissioner says in a footnote that had Teresa thought the spirometry testing was so important, she could have asked the ALJ to send her for one or sought one from her doctors herself. Be that as it may, it is curious the Commissioner would make that point on the one hand and, on the other hand, make the point that the agency sent Teresa for several tests at its own expense to evaluate "thoroughly" whether she met Listing 3.02. Dft's MSA (Doc, 20-1 at pg. 11). If the agency was so willing to send Teresa for additional tests and was so certain her August 2017 spirometry study was invalid, why did the agency not simply have her submit to a spirometry re-test? This matter must be remanded.

---

[6] The question was posed by the State Agency medical advisor, "Is it reasonable to send her back to CE for another Vent Study or is a sedentary RFC supported by MER in file at this time?" AR 96. The document then reads, "I favor proceeding with a DLCO." *Id*.

**B**

It is unnecessary for the Court to address Teresa's remaining argument because the ALJ's error at Step Three alone warrants remand. The Court expects that on remand, the ALJ will: remain mindful of Teresa's arguments made here as to testimony provided by three different VEs about her past relevant work; and ensure that he resolve any conflicts presented by the VE testimony with sufficient articulation.

**V**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 16) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 20) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four."

*It is so ordered.*

Entered on December 15, 2021.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE